*DET # 150000599*

*24*

Aidan Forsyth                                    *6*
903 East 430 South
Salem, UT 84653
801-473-9951
aafpretail@gmail.com
jbq.esq@gmail.com
*Plaintiff/Relator*
Pro Se

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA, <u>ex</u> <u>rel</u>. AIDAN FORSYTH,<br><br>       Plaintiff,<br><br>vs.<br><br>FIRAS HAJJAR, NADINE HAJJAR, MARK HAJJAR, YOUR FANTASY WAREHOUSE, INC., UGLY CHRISTMAS SWEATER, INC., and COSTUME AGENT, INC.,<br><br>       Defendants. | **COMPLAINT FOR VIOLATION OF FEDERAL FALSE CLAIMS ACT**<br><br>**(Filed in camera and under seal)**<br>**(DO NOT PLACE ON PACER)**<br><br>**JURY TRIAL DEMANDED**<br><br>Case:2:22-cv-11432<br>Judge: Steeh, George Caram<br>MJ: Grey, Jonathan J.C.<br>Filed: 06-21-2022 At 12:26 PM<br>CMP USA V. SEALED (DA) |

Plaintiff-Relator Aidan Forsyth, acting on behalf of the United States of America (the **"Government"** or the **"Federal Government"**) and against the above-named Defendants, alleges based upon personal knowledge, relevant documents, information, and belief, as follows.

## **INTRODUCTION**

1.      This is an action to recover damages and civil penalties on behalf of the United States of America arising from false and/or fraudulent records, statements, and claims made and caused to be made by Defendants and/or their agents and employees, in violation of the federal False Claims Act, 31 U.S.C. §§ 3729, *et seq.* **("the FCA")**.

2. This action seeks to recover hundreds of thousands of federal dollars wrongfully loaned to Defendants through the Federal Government's Payroll Protection Program (**"PPP"**). The PPP provides a pathway to borrowers for forgiveness of these loans.

3. Pursuant to the PPP, the Federal Government has spent billions of dollars in stimulus funding, as well as other federal funding, to support and aid legitimate businesses through the coronavirus pandemic.

4. This action alleges that Defendants applied for PPP funds and received PPP funds despite the PPP application and rules prohibiting applicants from receiving PPP funds when they are were convicted of a felony involving fraud, bribery, embezzlement, or a false statement in a loan application for federal financial assistance within the last five years or any other felony within the last year.

5. The FCA was enacted during the Civil War, and was substantially amended in 1986, and again in 2009 and 2010. Congress amended the FCA in 1986 to enhance the Federal Government's ability to recover losses sustained as a result of fraud against the United States after finding that fraud in federal programs was pervasive and that the FCA, which Congress characterized as a primary tool for combating government fraud, was in need of modernization. The amendments create incentives for individuals to come forward with information about fraud against the Federal Government without fear of reprisals or inaction, and enable the use of private legal resources to prosecute fraud claims on the Federal Government's behalf.

6. The FCA prohibits, *inter alia*: (1) knowingly presenting, or causing to be presented, a false or fraudulent claim for payment or approval; and (2) knowingly making or using, or causing to be made or used, a false or fraudulent record or statement material to a false or fraudulent claim. 31 U.S.C. §§ 3729(a)(1)(A), (B). Any person who violates the FCA is liable for a civil penalty for each such claim, **plus three times the amount of the damages** sustained

2

by the Government. 31 U.S.C. § 3729(a)(1)(A) (as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 [28 U.S.C. § 2461 note; Public Law 104-410]).

7.     In 2009, Congress amended the FCA to clarify that a "claim" includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property that (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest..." 31 U.S.C. § 3729(b)(2).

8.     The FCA allows any person having information about an FCA violation to bring an action for himself and the Federal Government, and to share in any recovery. The FCA requires that the complaint be filed under seal for a minimum of 60 days (without service on Defendants during that time) to allow the Federal Government time to conduct its own investigation and to determine whether to join the suit.

9.     Based on the foregoing laws, *qui tam* Plaintiff/Relator seeks through this action to recover all available damages, civil penalties, and other relief for the violations alleged herein in every jurisdiction to which Defendants' misconduct has extended.

## PARTIES

10.     Plaintiff/Relator Aidan Forsyth **("Relator")** is a resident of New York. He brings this action on behalf of the United States of America, the real party in interest.

11.     Upon information and belief, Defendant Firas Hajjar **("F. Hajjar")** is a resident within the boundaries of the Eastern District of Michigan.

12.     Upon information and belief, Defendant Nadine Hajjar **("N. Hajjar")** is the spouse of F. Hajjar and is also a resident within the boundaries of the Eastern District of Michigan.

3

13.     Upon information and belief, Mark Hajjar **("M. Hajjar")** is the brother of F. Hajjar and is a resident within the boundaries of the Eastern District of Michigan.

14.     Defendant Your Fantasy Warehouse, Inc. **("Your Fantasy Warehouse")** is an entity doing business within the boundaries of the Eastern District of Michigan. F. Hajjar and N. Hajjar, through Your Fantasy Warehouse, applied for and received a PPP loan in the amount of $369,380 on or about June 22, 2020.

15.     Said loan was forgiven on March 11, 2021.

16.     According to the PPP application discussed below, owners of Your Fantasy Warehouse include partners or members owning 20% or more equity in the company. Upon information and belief, and after further discovery in this matter, Relator anticipates he may need to amend this Complaint to add in such owners or representatives as co-defendants if they were complicit in the fraudulent misrepresentations listed herein.

17.     The individual Defendants further applied for and obtained PPP loans and an EIDL loan ostensibly for the entity Defendants, as explained below.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730. Although this issue is no longer jurisdictional after the 2009 amendments to the FCA, to Realtor's knowledge there has been no statutorily relevant public disclosure of the "allegations or transactions" in this Complaint, as those concepts are used in 31 U.S.C. § 3730(e), as amended by Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119, 901-02.

19.     Moreover, whether or not such a disclosure has occurred, Relator would qualify as an "original source" of the information on which the allegations or transactions in this

4

Complaint are based. Plaintiff researched and discovered the pertinent entity information and individual information of each Defendant.

20. This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because that section authorizes nationwide service of process and because Defendants are Michigan residents or a Michigan entity.

21. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b)-(c) and 31 U.S.C. § 3732(a) because Defendants can be found in and/or transacted business in this district, and because violations of 31 U.S.C. §§ 3729 *et seq*. alleged herein occurred within this district. At all times relevant to this Complaint, Defendants regularly conducted substantial business within this district.

## THE PAYCHECK PROTECTION PROGRAM

22. Congress added sections 1102 and 1106 of the Coronavirus Aid, Relief, and Economic Security Act (**"CARES Act"**). Section 1102 contains a new program called the Paycheck Protection Program (**"PPP"**) and is party of the U.S. Small Business Administration's (**"SBA"**) 7(a) Loan Program. These two sections are intended to provide economic relief to small businesses nationwide adversely impacted by the coronavirus pandemic and the COVID-19 Emergency Declaration issued by President Trump on March 13, 2020.

23. Due to the COVID-19 emergency, many small businesses nationwide are experiencing economic hardship as a direct result of the Federal, State, and local public health measures that are being taken to minimize the public's exposure to the coronavirus.

24. The SBA received funding and authority through the CARES Act to modify existing loan programs and establish the new PPP loan program to assist small businesses nationwide adversely impacted by the coronavirus pandemic.

25.     Section 1102 of the Act temporarily permits SBA to guarantee 100% of 7(a) loans under the PPP. Section 1106 of the CARES Act provides for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

26.     The CARES Act was intended to provide relief to America's small businesses expeditiously.

27.     The CARES Act gives lenders delegated authority to process loan applications for PPP funding. SBA allowed lenders to rely on certifications of the borrowers in order to determine eligibility of the borrower and use of loan proceeds, and to rely on specified documents provided by the borrower to determine qualifying loan amount, and eligibility for loan forgiveness. Lenders are held harmless for borrowers' failures to comply with PPP rules.

28.     Defendants had to submit documentation necessary to establish eligibility such as payroll processor records, payroll tax filings, form 1099s, income and expenses documentation.

29.     In general, Defendants calculated an amount to borrow by aggregating payroll costs from the previous 12 months for employees whose principal place of residence is the United States. Annual employee salaries are capped at $100,000. The borrower then calculated the average monthly payroll cost and multiplied that amount by a factor of 2.5.

30.     One certification on the Application states, "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."

31.     Your Fantasy Warehouse, Ugly Christmas Sweater, and Costume Agent certified on their PPP application that within the last five years neither the applicant nor any owner of the applicant had been convicted or pleaded guilty for any felony. *See*, section 6 on the PPP application.

6

32.     Defendants also "further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."

33.     Finally, Defendants certified on the PPP loan applications that they "understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000."

## **ALLEGATIONS**

34.     On October 17, 2019, F. Hajjar pleaded guilty in case 2:19-cr-20631-DPH-EAS to "evasion of assessment, in violation of 26 U.S.C. § 7201." *See*, F. Hajjar's "Rule 11 Plea Agreement" attached hereto as **Exhibit A**.

35.     Specifically, according to the Plea Agreement, F. Hajjar "attempted to evade or defeat a tax or the payment thereof," an "additional tax was due and owing," and he "acted willfully." *Id.* at 1.

36.     F. Hajjar's tax evasion specifically related to Your Fantasy Warehouse according to the Plea Agreement: "Your Fantasy Warehouse ('YFW') … was an internet-only retail business that sold popular-culture shirts, sweaters, and other items." *Id.* at 2.

37.     F. Hajjar "was the sole shareholder of YFW and controlled its operations." *Id.*

38.     F. Hajjar "provided fraudulent information to his accountant regarding the amount of corporate sales deposited into the YFW PayPal account." As a result, YFW's accounted

7

submitted false and fraudulent tax forms to the IRS that understated the gross receipts and net income earned by YFW. *Id.* at 3.

39.     The Plea Agreement details further fraud committed by F. Hajjar, which he admitted in the Plea Agreement.

40.     F. Hajjar signed the Plea Agreement. *Id.* at 11.

41.     According to the Plea Agreement and the Articles of Incorporation for Your Fantasy Warehouse, F. Hajjar owned 100% of this entity.

42.     Yet, according to the SBA, the recipient of the PPP loan for Your Fantasy Warehouse was a female, N. Hajjar.

43.     In 2022, F. Hajjar added N. Hajjar as a director of Your Fantasy Warehouse.

44.     Upon information and belief, F. Hajjar added N. Hajjar to Your Fantasy Warehouse to somehow avoid answering section 6 on the PPP loan application.

45.     Upon information and belief, F. Hajjar used his wife, N. Hajjar, to perpetrate the PPP fraud described herein relating to Your Fantasy Warehouse.

46.     Upon information and belief, N. Hajjar knowingly joined F. Hajjar in the perpetration of this fraud.

47.     Additionally. F. Hajjar obtained a PPP loan in the amount of $41,665 on May 1, 2020 for Ugly Christmas Sweater.

48.     Although the SBA lists Ugly Christmas Sweater as a female-owned business (i.e. owned by N. Hajjar), according to the Articles of Incorporation for this entity F. Hajjar owns 100% of this entity.

49.     F. Hajjar obtained another PPP loan in the amount of $31,353 on February 4, 2021 for Costume Agent Inc. Although the SBA lists Costume Agent as a female-owned

business (i.e. owned by N. Hajjar), according to the Articles of Incorporation for this entity, F. Hajjar owns this entity with his brother, M. Hajjar.

50.    The four loans described above total $484,066 of which Relator has been able to determine  $414,000 has been forgiven.

51.    The entity-Defendants have also received Economic Injury Disaster Loans totaling $14,000. Upon information and belief, Defendants obtained these loans in violation of EIDL rules barring felons from participating.

52.    Plaintiff used his own efforts and data-mining skills, techniques, and abilities to review and analyze data from the SBA, from the Michigan Department of Commerce, and the federal court system to discover Defendants and their fraud described above.

53.    The entity Defendants each certified on their PPP applications that none of their owners had been convicted of a felon involving fraud or pleaded guilty to a felony involving fraud.

54.    Defendants thus made material misrepresentations on their applications for PPP funds, knowing lenders and the Federal Government would rely on said representations in paying PPP funds and EIDL funds to Defendants.

55.    Relator reserves the right to amend this Complaint and expand these allegations upon review of the actual applications and supporting documentation submitted by Defendants.

## False Claims Act

## 31 U.S.C. § 3729(a)(1)(A)-(B)

56.    Relator realleges and incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

57.    This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq*., as amended.

58.     By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the United States Government, or authorized agent of the United States Government, for payment or approval.

59.     By virtue of the acts described above, Defendants knowingly made or used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for payment by the Government.

60.     Relator cannot at this time identify all of the false claims for payment that were caused by Defendants' conduct. The false claims were presented to third party lending institutions. Relator does not have access to the records of all such false or fraudulent statements or claims.

61.     Lenders, acting on behalf of the Federal Government, were guaranteed 100% of the PPP loans from the Federal Government. Said lenders were unaware of the falsity of the records, statements, and claims made or caused to be made by Defendants. Said lenders paid the claims that would not be paid but for Defendants' illegal conduct.

62.     By reason of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

63.     Additionally, the United States is entitled to a maximum penalty for each and every violation arising from Defendants' unlawful conduct alleged herein.

## **PRAYER**

WHEREFORE, *qui tam* Plaintiff/Relator prays for judgment against each Defendant as follows:

1.  That this Court enter judgment against each Defendant in an amount equal to three times the damages the United Sates has sustained because of Defendant's actions,

10

plus a civil penalty of not less than $5,500 and not more than $11,000 for each

violation of 31 U.S.C. § 3729;

2.  That Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. §

3730(d);

3.  That Relator be awarded all costs of this action, including attorney's fees and

expenses; and

4.  That Relator recover such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a

trial by jury.

Dated: 6/20/2022.                    Respectfully submitted,

Aidan Forsyth
Plaintiff/Relator

# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,                       CRIMINAL NO.: 2:19-CR-20631

v.

                                          HONORABLE: Denise Page Hood

FIRAS HAJJAR,

               Defendant.

_____ /

## RULE 11 PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure,

defendant FIRAS HAJJAR and the government agree as follows:

### 1.    OFFENSE AND MAXIMUM PENALTIES

#### A.    Count of Conviction

Defendant agrees to enter a plea of guilty to Count One of the Information,

which charges Defendant with Evasion of Assessment, in violation of 26 U.S.C. §

7201.

#### B.    Maximum Penalties

Defendant understands that the relevant maximum penalties for Count

One, Evasion of Assessment, is five years imprisonment, a three-year period of

supervised release, a $250,000 fine, and a $100 special assessment.

Defendant further understands that supervised release may be revoked if

its terms and conditions are violated. Thus, a violation of supervised release

increases the possible period of incarceration and makes it possible that the



1

Defendant will have to serve the original sentence, plus a substantial additional period, without credit for time already spent on supervised release.

Defendant understands that he must provide the government with a receipt for the payment of the $100 special assessment for Count One before sentence is imposed.

### C.   Elements of Offense

Defendant understands that the elements of Count One, alleging Defendant committed the crime of Evasion of Assessment, in violation of 26 U.S.C. § 7201, are:

   a.   Defendant attempted to evade or defeat a tax or the payment thereof;

   b.   An additional tax was due and owing; and

   c.   The defendant acted willfully.

### D.   Factual Basis for Guilty Plea

Defendant admits to the following facts and submits them as a sufficient and accurate basis for Defendant's guilty plea:

   1)   Defendant FIRAS HAJJAR was a resident of ~~Commerce Township~~ *WEST BLOOMFIELD* /FH/, Michigan.

   2)   Your Fantasy Warehouse ("YFW") was a corporation operating in Commerce Township, Michigan.  YFW was an internet-only retail business that sold popular-culture shirts, sweaters, and other items.  Defendant FIRAS HAJJAR was the sole shareholder of YFW and controlled its operations.  YFW accepted customer payments through the online payment system, PayPal.

2

3)      During 2012, Defendant FIRAS HAJJAR provided fraudulent information to his accountant regarding the amount of corporate sales deposited into the YFW PayPal account. As a result, on or about June 25, 2013, Defendant FIRAS HAJJAR caused the YFW accountant to prepare and submit to the IRS a false and fraudulent YFW 2012 Forms 1120S, U.S. Income Tax Return for an S Corporation, that understated the gross receipts and net income earned by YFW.

4)      As the sole shareholder of YFW, Defendant FIRAS HAJJAR reported Schedule K-1 Income earned from YFW to the IRS on a Schedule E, Supplemental Income and Loss (From rental real estate, royalties, partnerships, S corporations, estates, trusts, REMICs, etc.), attached to his own Forms 1040, U.S. Individual Income Tax Return, .

5)      On or about June 25, 2013, Defendant FIRAS HAJJAR filed his own false and fraudulent 2012 Form 1040 with the IRS that underreported his individual total income and tax due and owing, with an attached Schedule E that underreported the income he earned from YFW.  In that false return, Defendant FIRAS HAJJAR stated that his total income for the calendar year 2012 was $415,733, and that the amount of tax due and owing thereon was $90,138, when in fact, as he then and there knew, his taxable income and tax due and owing were well in excess of the amounts he reported.

## 2.    <u>SENTENCING GUIDELINES</u>

### A.    <u>Standard of Proof</u>

The Court will find sentencing factors by a preponderance of the evidence.

3

B.     **Agreed Guideline Range**

There are no sentencing guideline disputes.

The parties agree and stipulate that, regarding Count One, Defendant is responsible for relevant criminal conduct that resulted in a combined total of between approximately $251,000 and $1,499,000 of additional tax due and owing during the relevant time period of January of 2011 to December of 2014, which results in a base offense level of either 18, pursuant to §§ 2T1.1(a)(1), 2T4.1(G) of the Sentencing Guidelines or 20, pursuant to §§ 2T1.1(a)(1), 2T4.1(H) of the Sentencing Guidelines. The parties agree they will present evidence and argument at the sentencing hearing in this matter, regarding whether the proper calculation of the relevant criminal conduct in this matter results in an adjusted offense level for Count One of 18 or 20.

The parties agree and stipulate that Defendant's criminal history causes him to have a criminal history category of I. The parties agree and stipulate that, as of the date of this agreement, Defendant has demonstrated acceptance of responsibility for his offense, making Defendant eligible for a two-level downward adjustment in offense level under § 3E1.1(a) of the Sentencing Guidelines. The parties further agree and stipulate that, as of the date of this agreement, Defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying the government of his intent to plead guilty, making Defendant eligible for an additional one-level downward adjustment in offense level under §3E1.1(b) of the Sentencing Guidelines.

Accordingly, the parties stipulate and agree that, if Defendant's combined adjusted offense level is 15, Defendant's guideline rage is 18 to 24 months, and if Defendant's adjusted offense level is 17, Defendant's guideline range is 24 to 30 months.  If the Court finds:

    a.    that Defendant's criminal history category is higher than I, or

    b.    that the offense level should be higher because, after pleading guilty, Defendant made any false statement to or withheld information from his probation officer; otherwise demonstrated a lack of acceptance of responsibility for his offense; or obstructed justice or committed any crime,

and if any such finding results in a guideline range higher than 24 to 30 months, the higher guideline range becomes the agreed range.  However, if the Court finds that Defendant is a career offender, an armed career criminal, or a repeat and dangerous sex offender as defined under the sentencing guidelines or other federal law, and that finding is not already reflected in the attached worksheets, this paragraph does *not* authorize a corresponding increase in the agreed range.

Neither party may take a position concerning the applicable guidelines that is different than any position of that party as reflected above, except as necessary to the Court's determination regarding subsections 2.B(a) and 2.B(b), above.

3.   **SENTENCE**

The Court will impose a sentence pursuant to 18 U.S.C. § 3553, and in doing so must consider the sentencing guideline range.

A.   **Imprisonment**

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B) the parties agree the sentencing guideline range as determined by Paragraph 2.B. is appropriate, but this recommendation does not bind the court.

B.   **Fine**

The parties stipulate and agree that, if Defendant's combined adjusted offense level is 15, Defendant's guidelines result in a fine range of $4,000 to $40,000, and if Defendant's adjusted offense level is 17, Defendant's guidelines result in a fine range of $5,000 to $50,000.

C.   **Supervised Release**

There is no agreement with respect to supervised release.  The Court may impose any term of supervised release up to the statutory maximum term, which in this case is three years.  The agreement concerning imprisonment described above in Paragraph 3.A. does not apply to any term of imprisonment that results from any later revocation of supervised release.

4.   **WAIVER OF RIGHT TO APPEAL**

If the sentence imposed does not exceed five years, Defendant waives any right he has to appeal his conviction or sentence.  If the sentence imposed is within the guideline range determined by Paragraph 2.B. the government agrees

not to appeal the sentence, but retains its right to appeal any sentence below that range. Nothing in the foregoing waiver of appellate and collateral review rights shall preclude the Defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

5. **COOPERATION WITH THE INTERNAL REVENUE SERVICE**

The Defendant agrees that he will cooperate fully with the Internal Revenue Service ("IRS") as follows:

A. Defendant agrees that, prior to sentencing, he will execute any IRS forms deemed necessary to enable the IRS to make an immediate assessment of the agreed upon or determined tax deficiency or restitution and will not file any refund claims. In addition Defendant will cooperate with the IRS with respect to the examination of Defendant's personal tax returns or for those business entities that he owns or controls. Pursuant to 26 U.S.C. § 6201(a)(4), the Internal Revenue Service, as an identified victim, may assess and collect the amount of restitution under an order pursuant to 18 U.S.C. § 3556 for failure to pay any tax imposed under this title in the same manner as if such amount were such tax.

B. Defendant further agrees to provide to the IRS or any state taxing authority any information requested regarding Defendant's individual income tax liabilities for the tax years 2011 through 2014. Defendant further agrees to pay to the IRS and to any state taxing authority the taxes, penalties, and interest due and owing by him for the tax years 2011 through 2014. Defendant understands that interest as fixed by statute will continue to accrue until his civil tax liabilities are fully paid. In the event that Defendant fails to comply with this provision of

7

the agreement, the government may void this agreement in whole or in part. Nothing in this agreement shall limit the authority of the IRS or a state taxing authority to collect Defendant's tax liabilities in any manner authorized by law.

Defendant specifically authorizes release by the IRS or other investigative agency to the aforementioned agencies and their representatives of information for purposes of making that assessment. Defendant further agrees to assent to the filing and allowance of a motion under Rule 6(e) of the Federal Rules of Criminal Procedure, to permit the disclosure of matters occurring before the grand jury for this purpose, provided the Defendant receives a copy.

By entering into this Agreement, the government does not compromise any federal or state civil liability, including but not limited to any tax liability, which Defendant may have incurred or may incur as a result of his conduct and his plea of guilty to the charges specified in this Agreement. Defendant agrees that this agreement, or any judgment, order, release, or satisfaction issued in connection with this agreement, will not satisfy, settle, or compromise the Defendant's obligation to pay the balance of any remaining civil liabilities, including tax, additional tax, additions to tax, interest, and penalties, owed to the IRS or to a state taxing authority for the time period(s) covered by this Agreement or any other time.

Nothing in this agreement shall limit the Internal Revenue Service in its assessment and collection of any taxes, penalties or interest due from the Defendant.

## 6.   **LEGAL REPRESENTATION**

Defendant is satisfied with the legal representation provided by Defendant's lawyer. Defendant and his lawyers have fully discussed this plea agreement, and Defendant is agreeing to plead guilty because Defendant admits that he is guilty.

## 7.   **CONSEQUENCES OF A WITHDRAWN GUILTY PLEA**

If Defendant is allowed to withdraw his guilty plea or if any conviction entered pursuant to this agreement is vacated, the Court shall, on the government's request, reinstate any charges that were dismissed as part of this agreement. If additional charges are filed against Defendant within six months after the date the order vacating Defendant's conviction or allowing him to withdraw his guilty plea becomes final, which charges relate directly or indirectly to the conduct underlying the guilty plea, Defendant waives his right to challenge the additional charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired, provided that such charges were timely under the applicable limitations period as of the date this agreement was executed. If the Court allows Defendant to withdraw his guilty plea for a "fair and just reason" pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B), Defendant waives his rights under Federal Rule of Evidence 410, and the government may use his guilty plea, any statement made under oath at the change-of-plea hearing, and the factual basis statement in this plea agreement, against him in any proceeding.

8. **EACH PARTY'S RIGHT TO WITHDRAW FROM THIS AGREEMENT**

The government may withdraw from this agreement if the Court finds the correct guideline range to be different than is determined by Paragraph 2B.

Defendant may withdraw from this plea agreement, and may withdraw his guilty plea, if the Court decides to impose a sentence higher than five years of imprisonment. This is the only reason for which Defendant may withdraw from this agreement.

9. **PARTIES TO THE PLEA AGREEMENT**

Unless otherwise indicated, this agreement does not bind any government agency except the U.S. Attorney's Office for the Eastern District of Michigan and the Tax Division of the Department of Justice.

10. **SCOPE OF THE PLEA AGREEMENT**

This agreement, which includes all documents that it explicitly incorporates, is the complete agreement between the parties. It supersedes all other promises, representations, understandings, and agreements between the parties concerning the subject matter of this plea agreement that are made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to Defendant or to Defendant's attorney at any time before Defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this agreement.

This agreement does not prevent any civil or administrative actions against Defendant, or any forfeiture claim against any property, by the United States or any other party.

## 11.  ACCEPTANCE BY THE DEFENDANT

This plea offer expires unless it has been received, signed by Defendant and his attorney, at the Northern Criminal Enforcement Section of the Department of Justice Tax Division by 9:00 A.M. on Friday, September 6, 2019. The government reserves the right to modify or revoke this offer at any time before Defendant appears and pleads guilty.

ROSEMARY E. PAGUNI
Chief
*Northern Criminal Enforcement Section*
U.S. Department of Justice, Tax Division

Date:  October  17ᵗʰ, 2019

_____
MARK MCDONALD
*Trial Attorney*

By signing below, Defendant acknowledges that he has read (or been read) this entire document, understands it, and agrees to its terms. He also acknowledges that he is satisfied with his attorney's advice and representation. Defendant agrees that he has had a full and complete opportunity to confer with his lawyer, and has had all of his questions answered by his lawyer.

_____
ERIC M. NEMETH, ESQ.
Attorney for Defendant

_____
FIRAS HAJJAR
Defendant

_____
STEVEN B. FISHMAN,
Attorney for Defendant

Date:  October  17ᵗʰ, 2019



receipt# 150000599

903 E. 430 S,
Salem, UT 84653

U.S. District Court
Eastern District of Michigan
Theodore Levin Courthouse
231 W. Lafayette Blvd
Detroit, MI 48226

RECEIVED
JUN 21 2022
CLERK'S OFFICE
DETROIT
U.S. DISTRICT COURT

Case 2:22-cv-11432
Judge: Steeh, George Caram
MJ: Grey, Jonathan J.C.
Filed: 06-21-2022 At 12:26 PM
CMP USA V. SEALED (DA)

Retail

USPS
US POSTAGE PAID
Origin: 84653
06-07-22
4978840953-04

F

$6.15

FIRST-CLASS PKG SVC - RTL ™

0 Lb 11.90 Oz
1024

C062

SHIP
TO:
231 W LAFAYETTE BLVD
DETROIT MI 48226-2700

USPS TRACKING® #

9500 1103 2917 2172 3995 22

JM9