## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Attorney's Office for the Eastern District of Michigan and on behalf of the United States Small Business Administration ("SBA") (collectively, the "United States"), Delta Staffing LLC ("Delta Staffing"), and Aidan Forsyth ("Relator") (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A. Delta Staffing is a Michigan limited liability company with a principal place of business in Clarkston, Michigan.

B. At all relevant times to this Agreement, Bradley T. McKouen ("Mr. McKouen") owned and operated Delta Staffing.

C. On June 21, 2022, Aidan Forsyth filed a *qui tam* action in the United States District Court for the Eastern District of Michigan against Delta Staffing captioned *U.S. ex rel. Forsyth v. Delta Staffing, et al.*, No. 2:22-cv-11432, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Action").

D. The Paycheck Protection Program ("PPP") was established under the Coronavirus Aid, Relief, and Economic Security Act, to aid small businesses suffering economically because of the COVID-19 pandemic. The PPP provided forgivable loans for employee payroll and certain other eligible expenses.

E. PPP loans were processed by participating lenders, which received a processing fee from the SBA. If a PPP loan was approved, the participating lender funded the loan, which was guaranteed by the SBA up to the full amount of the loan.

F.  Delta Staffing obtained a first draw PPP loan identified as SBA Loan Number 1271317207 with a principal loan amount of $218,700.00 ("First Draw Loan").

G.  Delta Staffing obtained a second draw PPP loan identified as SBA Loan Number 5733628500 with a principal loan amount of $218,700.00 ("Second Draw Loan").

H.  Delta Staffing obtained from the SBA full loan forgiveness for the First and Second Draw Loans, thereby causing the SBA to reimburse the lenders a total of $462,241.92.

I.  Prior to the First and Second Draw Loans, Mr. McKouen pleaded guilty to felony Tax Evasion, in violation of 26 U.S.C. § 7201, in the United States District Court for the Eastern District of Michigan, captioned *U.S. v. Bradley T. McKouen*, No. 14-cr-20150-1.

J.  Following his conviction for felony Tax Evasion, Mr. McKouen received a sentence of a term of imprisonment followed by supervised release. Mr. McKouen's supervised release began on May 11, 2016 and terminated February 20, 2018.

K.  The United States contends that it has certain civil claims against Delta Staffing related to the First and Second Draw Loans. Specifically, the United States contends that Delta Staffing violated the False Claims Act, 31 U.S.C. §§ 3729–33, when it falsely certified that neither Delta Staffing, nor any of its owners, had, within the last five years, for any felony, (1) been convicted; (2) pleaded guilty; (3) pleaded nolo contendere; or (4) had been placed on any form of parole or probation. In reality, however, Mr. McKouen had, within the last five years, been placed on supervised release resulting from his felony conviction for Tax Evasion, thereby rendering Delta Staffing and Mr. McKouen categorically ineligible for the PPP. That conduct is referred to below as the "Covered Conduct."

L.  This Agreement is neither an admission of liability by Delta Staffing, nor a concession by the United States that its claims are not well founded.

M. Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1. Delta Staffing shall pay to the United States $924,483.84, plus applicable interest ("Settlement Amount"), of which $462,241.92 is restitution, by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Eastern District of Michigan as follows:

    a. Within 10 days of the Effective Date of this Agreement, Delta Staffing will make a payment to the United States in the amount of $200,483.84 ("Initial Payment").

    b. Over a period of four years (16 quarters), Delta Staffing will pay the remaining $724,000, plus interest at a rate of 4.0% per annum, in quarterly installments pursuant to the payment schedule attached as Exhibit A ("Payments Over Time").

    c. If Delta Staffing or any of its affiliates is sold, merged, or transferred, or a significant portion of the assets of Delta Staffing or any of its affiliates is sold, merged, or transferred into another non-affiliated entity, then Delta Staffing shall promptly notify the United States, and all remaining payments owed pursuant to this Agreement shall be accelerated and become immediately due and payable.

    d. The Settlement Amount may be prepaid, in whole or in part, without penalty or premium.

2.	In addition to the Initial Payment and Payments Over Time made pursuant to Paragraph 1, above, if Delta Staffing's total income exceeds $4,000,000 within any of the next four years (2025, 2026, 2027, and 2028), then Delta Staffing agrees to pay to the United States the following contingent payments ("Contingent Payments"):

    a.	Delta Staffing will pay 5% of its Total Income greater than $4,000,000 to the United States for each year covered by this Agreement. "Total Income" shall be defined as the "Total Income" reported by Delta Staffing on its IRS Form 1120-S (line 6 in 2024), or its equivalent, for each corresponding tax year.

    b.	Contingent Payments are in addition to, and not in lieu of, the Initial Payment and Payments Over Time. The sum of the Initial Payment, Payments Over Time, and Contingent Payments shall not exceed the Settlement Amount.

    c.	Delta Staffing will calculate Contingent Payments annually, if any, and will pay each year's Contingent Payment by April 30 of the following year. If no Contingent Payment is due for a particular year, then Delta Staffing shall provide written notice to that effect to the United States Attorney's Office for the Eastern District of Michigan, 211 W. Fort Street, Detroit, Michigan 48226 Attn: Chief, Affirmative Litigation Unit. Contingent Payments shall be made by electronic funds transfer to the United States in the same or similar manner as provided in Paragraph 1, above.

    d.	No later than April 30 of each applicable year, Delta Staffing will provide its filed federal tax returns, along with all supporting documentation and information reasonably necessary for the United States to determine the Contingent Payment amount(s), if any, owed by Delta Staffing under this Agreement. Delta Staffing will use best efforts to timely file all federal and state tax returns by April 15 for each year covered by this Agreement, and will not request

an extension of that tax filing deadline, unless the reason(s) for seeking such extension are first disclosed to the United States in writing to the United States Attorney's Office at the address listed in Paragraph 2.c.

   e. Delta Staffing agrees that it will not restructure its business in a manner that would reduce or eliminate a Contingent Payment that would otherwise be due under this Agreement.  In the event Delta Staffing has a legitimate need to materially restructure its business, Delta Staffing will provide advanced notice to the United States in writing to the United States Attorney's Office for the Eastern District of Michigan at the address listed in Paragraph 2.c.

   f. Delta Staffing agrees that any nondisclosure, false statement, or misrepresentation related to Contingent Payments shall be a material breach of this Agreement.

  3. Conditioned upon the United States receiving any payment required by Paragraphs 1 or 2 of this Agreement, and as soon as feasible after receipt, the United States shall pay to Relator by electronic funds transfer 15 percent of each such payment received under the Agreement ("Relator's Share").

  4. Delta Staffing agrees to refrain from requesting loan forgiveness regarding any Economic Injury Disaster Loans obtained from the SBA, including SBA Loan Number 6370337810, and shall repay the loan(s) consistent with the terms of the applicable promissory note(s).

  5. Delta Staffing and Relator have entered into a separate agreement with respect to the payment by Delta Staffing of Relator's attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d) ("Relator's Statutory Fee Claim").

6. Subject to the exceptions in Paragraph 8 (concerning reserved claims), Paragraph 11 (concerning disclosure of assets), Paragraph 15 (concerning default), and Paragraph 16 (concerning bankruptcy) below, and conditioned upon the United States' receipt of the full Settlement Amount, the United States releases Delta Staffing from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud.

7. Subject to the exceptions in Paragraph 8 (concerning reserved claims), Paragraph 11 (concerning disclosure of assets), Paragraph 15 (concerning default), and Paragraph 16 (concerning bankruptcy) below, and conditioned upon the United States' receipt of the Settlement Amount, Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, releases Delta Staffing from any civil monetary claim the Relator has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

8. Notwithstanding the release given in Paragraph 6 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

    c. Except as explicitly stated in this Agreement, any administrative liability or enforcement right, or any administrative remedy, including the suspension and debarment rights of any federal agency;

    d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

      e.      Any liability based upon obligations created by this Agreement; and

      f.      Any liability of individuals.

9.      Relator and his heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the Relator's Share, Relator and his heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

10.      Relator, for himself, and for his heirs, successors, attorneys, agents, and assigns, releases Delta Staffing, and its officers, agents, and employees, from any liability to Relator arising from the filing of the Civil Action, or Relator's Statutory Fee Claim.

11.      Delta Staffing has provided sworn financial disclosures and supporting documents ("Financial Disclosures") to the United States and the United States has relied on the accuracy and completeness of those Financial Disclosures in reaching this Agreement. Delta Staffing warrants that the Financial Disclosures are complete, accurate, and current as of the Effective Date of this Agreement. If the United States learns of asset(s) in which Delta Staffing had an interest of any kind as of the Effective Date of this Agreement (including, but not limited to, promises by insurers or other third parties to satisfy Delta Staffing's obligations under this Agreement) that were not disclosed in the Financial Disclosures, or if the United States learns of any false statement or misrepresentation by Delta Staffing on, or in connection with, the Financial Disclosures, and if such nondisclosure, false statement, or misrepresentation changes

the estimated net worth set forth in the Financial Disclosures by $100,000 or more, the United States may at its option: (a) rescind this Agreement and reinstate its suit or file suit based on the Covered Conduct or (b) collect the full Settlement Amount in accordance with the Agreement plus one hundred percent (100%) of the net value of Delta Staffing's previously undisclosed assets. Delta Staffing agrees not to contest any collection action undertaken by the United States pursuant to this provision, and agrees that it will immediately pay the United States the greater of (i) a ten-percent (10%) surcharge of the amount collected in the collection action, as allowed by 28 U.S.C. § 3011(a), or (ii) the United States' reasonable attorneys' fees and expenses incurred in such an action. In the event that the United States opts to rescind this Agreement pursuant to this paragraph, Delta Staffing waives and agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States within 120 calendar days of written notification to Delta Staffing that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on the Effective Date of this Agreement.

12. Delta Staffing waives and shall not assert any defenses Delta Staffing may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

13. Delta Staffing fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses

of every kind and however denominated) that Delta Staffing has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

14.  a.  Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of Delta Staffing, and its present or former officers, directors, employees, shareholders, and agents in connection with:

(1) the matters covered by this Agreement;

(2) the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3) Delta Staffing's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

(4) the negotiation and performance of this Agreement; and

(5) the payments Delta Staffing makes to the United States pursuant to this Agreement, and any payments that Delta Staffing may make to Relator, including costs and attorneys' fees,

are unallowable costs for government contracting purposes (hereinafter referred to as Unallowable Costs).

b.  Future Treatment of Unallowable Costs: Unallowable Costs will be separately determined and accounted for by Delta Staffing, and Delta Staffing shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

    c.  Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Agreement, Delta Staffing shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by Delta Staffing or any of its subsidiaries or affiliates from the United States. Delta Staffing agrees that the United States, at a minimum, shall be entitled to recoup from Delta Staffing any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment. The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine Delta Staffing's books and records and to disagree with any calculations submitted by Delta Staffing or any of its subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by Delta Staffing, or the effect of any such Unallowable Costs on the amount of such payments.

  15.  The Settlement Amount represents the amount the United States is willing to accept in compromise of its civil claims arising from the Covered Conduct.

    a.  In the event that Delta Staffing fails to pay the Settlement Amount as provided in the payment schedule set forth in Paragraphs 1 and 2, above, Delta Staffing shall be in Default of Delta Staffing's payment obligations ("Default"). The United States will provide a written Notice of Default, and Delta Staffing shall have an opportunity to cure such Default within seven (7) calendar days from the date of receipt of the Notice of Default by making the payment due under the payment schedule and paying any additional interest accruing under this Agreement up to the date of payment. Notice of Default will be delivered to Delta Staffing, or to such other representative as Delta Staffing shall designate in advance in writing. If Delta Staffing fails to cure the Default within seven (7) calendar days of receiving the Notice of Default and in the

absence of an agreement with the United States to a modified payment schedule ("Uncured Default"), the remaining unpaid balance of the Settlement Amount shall become immediately due and payable, and interest on the remaining unpaid balance shall thereafter accrue at the rate of 12% per annum, compounded daily from the date of Default, on the remaining unpaid total (principal and interest balance).

    b.  In the event of Uncured Default, Delta Staffing agrees that the United States, at its sole discretion, may (i) retain any payments previously made, rescind this Agreement and pursue the Civil Action or bring any civil and/or administrative claim, action, or proceeding against Delta Staffing for the claims that would otherwise be covered by the releases provided in Paragraph 6, above, with any recovery reduced by the amount of any payments previously made by Delta Staffing to the United States under this Agreement; (ii) take any action to enforce this Agreement in a new action or by reinstating the Civil Action; (iii) offset the remaining unpaid balance from any amounts due and owing to Delta Staffing and/or affiliated companies by any department, agency, or agent of the United States at the time of Default or subsequently; and/or (iv) exercise any other right granted by law, or under the terms of this Agreement, or recognizable at common law or in equity.  The United States shall be entitled to any other rights granted by law or in equity by reason of Default, including referral of this matter for private collection.  In the event the United States pursues a collection action, Delta Staffing agrees immediately to pay the United States the greater of (i) a ten-percent (10%) surcharge of the amount collected, as allowed by 28 U.S.C. § 3011(a), or (ii) the United States' reasonable attorneys' fees and expenses incurred in such an action. In the event that the United States opts to rescind this Agreement pursuant to this paragraph, Delta Staffing waives and agrees not to plead, argue, or otherwise raise any defenses of statute of limitations, laches, estoppel or similar

theories, to any civil or administrative claims that are (i) filed by the United States against Delta Staffing within 120 days of written notification that this Agreement has been rescinded, and (ii) relate to the Covered Conduct, except to the extent these defenses were available on the Effective Date of this Agreement. Delta Staffing agrees not to contest any offset, recoupment, and /or collection action undertaken by the United States pursuant to this paragraph, either administratively or in any state or federal court, except on the grounds of actual payment to the United States.

16. In exchange for valuable consideration provided in this Agreement, Delta Staffing and Relator acknowledge the following:

    a. Delta Staffing has reviewed its financial situation and warrants that it is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I) and shall remain solvent following payment to the United States of the Settlement Amount.

    b. In evaluating whether to execute this Agreement, the Parties intend that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous exchange for new value given to Delta Staffing, within the meaning of 11 U.S.C. § 547(c)(1), and the Parties conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.

    c. The mutual promises, covenants, and obligations set forth herein are intended by the Parties to, and do in fact, constitute a reasonably equivalent exchange of value.

    d. The Parties do not intend to hinder, delay, or defraud any entity to which Delta Staffing was or became indebted to on or after the date of any transfer contemplated in this Agreement, within the meaning of 11 U.S.C. § 548(a)(1).

     e.  If any of Delta Staffing's payments or obligations under this Agreement are avoided for any reason (including but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code) or if, before the Settlement Amount is paid in full, Delta Staffing or a third party commences a case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors seeking any order for relief of Delta Staffing's debts, or to adjudicate Delta Staffing as bankrupt or insolvent; or seeking appointment of a receiver, trustee, custodian, or other similar official for Delta Staffing or for all or any substantial part of Delta Staffing's assets, then (i) the United States may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against Dela Staffing for the claims that would otherwise be covered by the releases provided in Paragraph 6 of this Agreement; and (ii) the United States has an undisputed, noncontingent, and liquidated allowed claim against Delta Staffing in the amount of $1,442,513, less any payments received pursuant to Paragraphs 1 and 2 of this Agreement, provided, however, that such payments are not otherwise avoided and recovered from the United States by Delta Staffing, a receiver, trustee, custodian, or other similar official; (iii) if any payments are avoided and recovered by a receiver, trustee, creditor, custodian, or similar official, the United States shall not be responsible for the return of any amounts already paid by the United States to the Relator; and (iv) if, notwithstanding subparagraph (iii), any amounts already paid by the United States to the Relator pursuant to Paragraph 3 are recovered from the United States in an action or proceeding filed by a receiver, trustee, creditor, custodian, or similar official in or in connection with a bankruptcy case that is filed within two years of the Effective Date of this Agreement or of any payment made under Paragraphs 1 and 2 of this Agreement, Relator shall,

13

within thirty days of written notice from the United States to the undersigned Relator's counsel, return to the United States all amounts recovered from the United States.

  f. Delta Staffing agrees that any civil and/or administrative claim, action, or proceeding brought by the United States under Paragraph 16.e is not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) because it would be an exercise of the United States' police and regulatory power. Delta Staffing shall not argue or otherwise contend that the United States' claim, action, or proceeding is subject to an automatic stay and, to the extent necessary, consents to relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1). Delta Staffing waives and shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claim, action, or proceeding brought by the United States within 120 days of written notification to Delta Staffing that the releases have been rescinded pursuant to this paragraph, except to the extent such defenses were available on the Effective Date of this Agreement.

  17. This Agreement is intended to be for the benefit of the Parties only.

  18. Upon receipt of the Initial Payment described in Paragraph 1, above, the United States and Relator shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1).

  19. Except as provided in Paragraph 5, above, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

  20. Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

21. This Agreement is governed by the laws of the United States. The exclusive venue for any dispute relating to this Agreement is the United States District Court for the Eastern District of Michigan. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

22. This Agreement constitutes the complete agreement between the Parties as to all claims in the Civil Action involving or on behalf of the United States. This Agreement may not be amended except by written consent of the Parties. Forbearance by the United States from pursuing any remedy or relief available to it under this Agreement shall not constitute a waiver of rights under this Agreement.

23. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

24. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

25. This Agreement is binding on Delta Staffing's successors, transferees, heirs, and assigns.

26. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

27. All Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

28. This Agreement is effective on the date of signature of the last signatory to the Agreement ("Effective Date of this Agreement"). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

## THE UNITED STATES OF AMERICA

DATED: 6/10/2025    BY:    JEROME F. GORGON JR.
                           United States Attorney

                           _____
                           ANTHONY C. GENTNER
                           Assistant United States Attorney
                           Eastern District of Michigan

## DELTA STAFFING LLC

DATED: _____    BY:    _____
                           BRADLEY T. MCKOUEN
                           Owner
                           Delta Staffing LLC

DATED: _____    BY:    _____
                           ERIC NEMETH
                           Varnum LLP
                           Counsel for Delta Staffing LLC

## RELATOR

DATED: _____    BY:    _____
                           AIDAN FORSYTH

DATED: _____    BY:    _____
                           J. BRYAN QUESENBERRY
                           Counsel for Aidan Forsyth

## THE UNITED STATES OF AMERICA

DATED: _____   BY: JEROME F. GORGON JR.
                                 United States Attorney

                                 ANTHONY C. GENTNER
                                 Assistant United States Attorney
                                 Eastern District of Michigan

## DELTA STAFFING LLC

DATED: 6-10-2025   BY: *[signature]*
                                 BRADLEY T. MCKOUEN
                                 Owner
                                 Delta Staffing LLC

DATED: 6/10/2025   BY: *[signature]*
                                 ERIC NEMETH
                                 Varnum LLP
                                 Counsel for Delta Staffing LLC

## RELATOR

DATED: _____   BY: _____
                                 AIDAN FORSYTH

DATED: _____   BY: _____
                                 J. BRYAN QUESENBERRY
                                 Counsel for Aidan Forsyth

## THE UNITED STATES OF AMERICA

DATED: _____ BY: JEROME F. GORGON JR.
United States Attorney


_____
ANTHONY C. GENTNER
Assistant United States Attorney
Eastern District of Michigan


## DELTA STAFFING LLC

DATED: _____ BY: _____
BRADLEY T. MCKOUEN
Owner
Delta Staffing LLC

DATED: _____ BY: _____
ERIC NEMETH
Varnum LLP
Counsel for Delta Staffing LLC


## RELATOR

DATED: 6/4/2025 BY: *(signature)*
AIDAN FORSYTH

DATED: 6/4/2025 BY: *(signature)*
J. BRYAN QUESENBERRY
Counsel for Aidan Forsyth

**EXHIBIT A**

| Debtor: Delta Staffing LLC | | | | | |
|---|---|---|---|---|---|
| Number | Due Date | Payment | Principal | Interest 4.0% | Balance |
| 1 | 10/1/2025 | $ 49,132.73 | $ 41,998.86 | $ 7,133.87 | $ 682,001.14 |
| 2 | 1/1/2026 | $ 49,132.73 | $ 42,412.70 | $ 6,720.03 | $ 639,588.44 |
| 3 | 4/1/2026 | $ 49,132.73 | $ 42,830.61 | $ 6,302.12 | $ 596,757.83 |
| 4 | 7/1/2026 | $ 49,132.73 | $ 43,252.63 | $ 5,880.10 | $ 553,505.20 |
| 5 | 10/1/2026 | $ 49,132.73 | $ 43,678.82 | $ 5,453.91 | $ 509,826.38 |
| 6 | 1/1/2027 | $ 49,132.73 | $ 44,109.20 | $ 5,023.53 | $ 465,717.18 |
| 7 | 4/1/2027 | $ 49,132.73 | $ 44,543.83 | $ 4,588.90 | $ 421,173.35 |
| 8 | 7/1/2027 | $ 49,132.73 | $ 44,982.74 | $ 4,149.99 | $ 376,190.61 |
| 9 | 10/1/2027 | $ 49,132.73 | $ 45,425.97 | $ 3,706.76 | $ 330,764.64 |
| 10 | 1/1/2028 | $ 49,132.73 | $ 45,873.57 | $ 3,259.16 | $ 284,891.07 |
| 11 | 4/1/2028 | $ 49,132.73 | $ 46,325.58 | $ 2,807.15 | $ 238,565.49 |
| 12 | 7/1/2028 | $ 49,132.73 | $ 46,782.05 | $ 2,350.68 | $ 191,783.44 |
| 13 | 10/1/2028 | $ 49,132.73 | $ 47,243.01 | $ 1,889.72 | $ 144,540.43 |
| 14 | 1/1/2029 | $ 49,132.73 | $ 47,708.51 | $ 1,424.22 | $ 96,831.92 |
| 15 | 4/1/2029 | $ 49,132.73 | $ 48,178.61 | $ 954.12 | $ 48,653.31 |
| 16 | 7/1/2029 | $ 49,132.71 | $ 48,653.31 | $ 479.40 | $ 0 |
| Totals | | $ 786,123.66 | $ 724,000.00 | $ 62,123.66 | |